JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

George Levy

**(b)** County of Residence of First Listed Plaintiff    Monmouth County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel S. Orlow, Esq.; Console Mattiacci Law, LLC

110 Marter Ave., Suite 502; Moorestown, NJ 08057

## DEFENDANTS

AT&T Services, Inc.

County of Residence of First Listed Defendant    Dallas, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | |      28 USC 157 |     3729(a)) |
| ☐ 140 Negotiable Instrument |     Liability    ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |     Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |     Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|     Student Loans | ☐ 340 Marine     Injury Product | |     New Drug Application | ☐ 470 Racketeer Influenced and |
|     (Excludes Veterans) | ☐ 345 Marine Product     Liability | | ☐ 840 Trademark |     Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |     Liability    **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |     Act of 2016 |     (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |     Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |     Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |     Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage |     Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |     Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |     Exchange |
| |     Medical Malpractice |     Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |     Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |     Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | |     or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |     Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** |     26 USC 7609 |     Act/Review or Appeal of |
| |     Employment    **Other:** | ☐ 462 Naturalization Application | |     Agency Decision |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |     Other    ☐ 550 Civil Rights |     Actions | |     State Statutes |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621, et seq

Brief description of cause:
Plaintiff was discriminated against because of his age.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
05/26/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____ :

| | |
|---|---|
| **GEORGE LEVY** : | |
| **Aberdeen, NJ** : | |
| : | **Civil Action No. _____** |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | **JURY TRIAL DEMANDED** |
| : | |
| **AT&T SERVICES, INC.** : | |
| **208 S. Akard St.** : | |
| **Dallas, TX 75202.** : | |
| : | |
| **Defendant.** : | |

_____ :

## CIVIL ACTION COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiff, George Levy, was an outstanding employee of AT&T for more than 21 years. On July 10, 2020, at age 63, Plaintiff was placed on "surplus" status and was told he would be terminated if he did not find another job in the company within two weeks.  Prior to his surplus notification, in February 2020, Plaintiff's direct supervisor had asked him how old he was. Thereafter, in March 2020 and early July 2020, Plaintiff was charged with training substantially younger employees to perform portions of his job duties.  Following his surplus notification on July 10, 2020 Plaintiff was not offered or selected for any internal positions and was terminated on July 24, 2020.  Defendant retained several substantially younger and less qualified employees in Plaintiff's position and organization.

AT&T discriminated against Plaintiff because of his age.  Plaintiff now brings this employment discrimination action for violations of the Age Discrimination in Employment Act,

29 U.S.C. § 621, *et seq.* ("ADEA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").

II.   **PARTIES**

1.     Plaintiff, George Levy, is an individual and citizen of the state of New Jersey, residing therein in Aberdeen, New Jersey, 07747.

2.     Plaintiff was born on May 9, 1957.

3.     Defendant AT&T Services, Inc. is incorporated in the State of Delaware and is duly registered to transact business in the state of New Jersey, with a registered agent located in New Jersey for service of legal process.  It maintains several places of business located throughout the state of New Jersey, maintains systematic and continuous activity such that it is at home in New Jersey, and has employed many people in the state of New Jersey, including Plaintiff.

4.     AT&T Services, Inc. is subject to the personal jurisdiction of this Court because, without limitation, this case arises out of or relates to the contacts of AT&T Services, Inc. with the state of New Jersey, the contacts of AT&T, Services, Inc. are continuous and systematic such that AT&T Services, Inc. is "at home" here, and/or AT&T Services, Inc. has consented to personal jurisdiction by personal service within the State via an authorized agent of the corporation.

5.     At all times material hereto, AT&T employed more than 20 people.

6.     At all times material hereto, AT&T has been engaged in an industry affecting interstate commerce and has acted as an "employer" within the meaning of the ADEA and NJLAD.

7.     At all times material hereto, AT&T acted by and through its authorized agents, servants, workmen, and/or employees within the course and scope of their employment with AT&T and in furtherance of AT&T's business.

2

8.     At all times material hereto, Plaintiff was an employee of AT&T within the meaning of the ADEA and NJLAD.

## III.   JURISDICTION AND VENUE

9.     The causes of action set forth in this Complaint arise under the ADEA and the NJLAD.

10.    The District Court has jurisdiction over all Counts (ADEA and NJLAD) pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiff is a citizen of the state of New Jersey and Defendant is not a citizen of the state of New Jersey.

11.    Venue is proper under 28 U.S.C. § 1391(b).

12.    On or about August 17, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

13.    On or about March 3, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

14.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   FACTUAL ALLEGATIONS

15.    Since at least March 1, 2013, and continuing until the present, AT&T has, as part

of a pattern and practice of age discrimination, conducted vast involuntary terminations referred to as "surplus" cases (such as the one giving rise to Plaintiff's termination) with the intent and effect of eliminating older workers from its workforce.

16.    AT&T has intentionally conducted these surplus cases in waves so as to keep older workers in the dark about the scope of its group terminations and selection procedures and has engaged in a fraud whereby older workers are deceived as to the information they receive regarding which employees are terminated and which employees are retained.

17.    Plaintiff was hired by AT&T on November 16, 1998.

18.    Plaintiff was a highly qualified and dedicated employee of AT&T for more than twenty-one (21) years.

19.    Plaintiff received annual merit increases, performance-based bonuses, and positive annual performance reviews.

20.    Plaintiff last held the position of Lead Channel Manager and last reported to Scott Corbin II (45[1]), Associate Director, Marketing Technology.

21.    Plaintiff's job duties consisted primarily of supporting the AT&T Public Sector segment with federal, state, and local government and education market sensing, contract analysis, and customer experience assessments.  Plaintiff was also responsible for market analysis and the reporting of channel marketing campaigns through the identification of data informed prospects, funnel activity, and lead conversions to sales.

22.    Plaintiff began reporting to Corbin in April 2020.

23.    Corbin reported to Aarthi Reddy (48) Assistant Vice President of Market Research and Analysis.

---

[1] All ages herein are approximations as of the date on which Plaintiff was selected for Surplus.

24.     Reddy reported to Pam Abel, Vice President of Distribution, Compensation, and Analytics.

25.     Prior to reporting to Corbin, Plaintiff had reported to Reddy and Al Jones, Director.

26.     In or about February 2020, Jones asked Plaintiff how old he was.

27.     Plaintiff informed Jones that he was sixty-two (62).

28.     In or about March 2020, Plaintiff was instructed to train younger employees, including Edgar Reyes (35), Specialist Sales Support, and Mayra Ruiz (38), Specialist Sales Support, on certain of his job duties and responsibilities.

29.     After he started reporting to Corbin, Plaintiff was not given the support, training, and resources that substantially younger employees were given to do the same job, despite his workload having increased.

30.     On or about July 1, 2020, Imshaan Somani (35), Lead Marketing Technology Manager, was transferred to report to Corbin.

31.     On July 7, 8, and 9, Corbin instructed Plaintiff to train Somani to perform his job duties and responsibilities.

32.     On July 10, 2020, AT&T notified Plaintiff that the position he held was being eliminated and that he was being placed on "surplus" status.

33.     At the time of Plaintiff's surplus notification, he was age sixty-three (63) and was the oldest employee reporting to Corbin.

34.     According to Plaintiff's surplus notification, he was to remain employed until July 24, 2020, at which time his employment would be terminated if he had not been selected by AT&T for, and accepted, another position at AT&T.

35.     Prior to Plaintiff's surplus notification, AT&T employees had been told by Jeff

5

McElfresh, CEO of AT&T Communications, that there would be a corporate downsizing and that impacted employees should not bother looking for jobs internally.

36.     Corbin told Plaintiff he did not know the reason why he was selected for surplus, and that the decision had been made at a higher level at AT&T.

37.     On July 10, 2020, along with Plaintiff's surplus notification, AT&T presented to Plaintiff a "General Release and Waiver" which, if signed, would have fraudulently purported to release all claims against AT&T, including federal age discrimination claims with respect to Plaintiff's employment.

38.     The General Release and Waiver was accompanied by an "ADEA Listing" dated July 7, 2020 which, among other things, provided no information as to which employees were actually being terminated by AT&T during the surplus case.  Without limitation:

a)     The General Release and Waiver and its accompanying materials purported to specify selection criteria, but in fact provided no meaningful information as to the criteria used for selecting employees for surplus notification.  The General Release and Waiver and its accompanying materials stated the following with regard to the criteria used for selecting employees for surplus notification: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc. Severance Pay Plan include some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

b)     The General Release and Waiver and its accompanying materials provided no information explaining the specific reason(s) for Plaintiff's selection for surplus notification.

c)     The General Release and Waiver falsely stated that Plaintiff was provided with the ages and job titles of those designated to participate in the Severance Plan.  In fact, as of that date, no one identified on the ADEA Listing was eligible for the Severance Plan.

d)     The information provided in the "ADEA Listing" was for a "Decisional Unit" identified as:

"The following positions in VP Pam Abel's Sales Ops and Compensation

organization Director Sales Operations Sales Planning Manager II positions within AVP Aarthi Reddy and Sr. Sales Planning Mgr. Michael Mahan's organizations L2 positions that support sales compensation reporting processes within AVP Aarthi Reddy's organization."

There was no information provided as to how this Decisional Unit was determined.

39.     The General Release and Waiver and accompanying ADEA Listing failed to provide the required disclosures for a knowing and voluntary waiver of claims under the Older Worker's Benefit Protection Act ("OWBPA").

40.     The General Release and Waiver and accompanying ADEA Listing was presented with the intent of harming older workers and fraudulently obtaining a purported release of Plaintiff's rights and claims under the ADEA.

41.     Within the "Decisional Unit" as defined on the ADEA Listing, there were five (5) employees who held Lead Channel Manager positions.

42.     Of the five (5) Lead Channel Manager positions in the Decisional Unit, two (2) were selected for surplus.  The other Lead Channel Manager employee selected for surplus along with Plaintiff was Mary Orns, age thirty-two (32).

43.     The ADEA Listing that Plaintiff received should have, but did not, show that Mary Orns was actually transferred to another position, was not terminated, and was in fact retained by AT&T following her surplus notification.

44.     Of the three (3) other Lead Channel Manager positions in the Decisional Unit besides Plaintiff and Orns, two of them were younger than age forty (40) (ages twenty-six (26) and thirty-one (31)).  These two Lead Channel Managers were not selected for surplus and were retained by AT&T.

45.     After July 10, 2020, AT&T did not select Plaintiff for any open and available positions with AT&T for which he was qualified, and Plaintiff received no response to emails

asking if there were any opportunities for him to rejoin the team.

46.    On July 24, 2020, AT&T terminated Plaintiff's employment.

47.    Plaintiff was the oldest Lead Channel Manager employee in the Decisional Unit.

48.    Plaintiff was the only Lead Channel Manager in the Decisional Unit who was terminated effective July 24, 2020.

49.    Plaintiff was one (1) of two (2) employees reporting to Corbin who was terminated.

50.    The other employee reporting to Corbin who was placed on surplus and terminated was Adrienne Bresnahan (60), Senior Data Analysis.

51.    As of the termination of Plaintiff's employment on July 24, 2020, Plaintiff was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

52.    Plaintiff refused to sign the General Release and Waiver.

53.    AT&T replaced Plaintiff with Somani (35).  Plaintiff was more qualified and experienced to perform his job duties and responsibilities than Somani.

54.    When Plaintiff was terminated, AT&T retained the following substantially younger employees in positions reporting to Corbin for which Plaintiff was qualified:

a)    Imshaan Somani (35), Lead Marketing Technology Manager.

b)    Elaine Arundell (48), Principal, Business Management.

c)    Mark Pursley (52), Lead Marketing Manager.

55.    When Plaintiff was terminated, AT&T retained the following younger employees reporting to Corbin in the Lead Channel Manager position:

a)    Jay Miller (26).

b)    Levry Severino (31).

c)      Mary Orns (32).

d)      John Keeney (58).

56.     Plaintiff's age was a determinative and/or motivating factor in AT&T's decision to select him for surplus, to not offer him any open positions for which he was qualified, and to terminate his employment.

57.     As a direct result of AT&T's discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, economic losses, a loss of earnings and/or earnings capacity, pain and suffering, loss of benefits, and other injuries, the full extent of which is not known at this time.

## COUNT I
## <u>VIOLATION OF THE ADEA</u>

58.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

59.     Defendant, AT&T Services, Inc., intentionally discriminated against Plaintiff because of his age.

60.     Defendant, AT&T Services, Inc., has violated the ADEA by committing the foregoing acts of discrimination against Plaintiff, including selecting Plaintiff for surplus, failing to select him for open positions for which he was qualified, and terminating his employment.

61.     As a direct result of Defendant's violation of the ADEA, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

62.     Defendant's acts of discrimination in violation of the ADEA were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

63.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

64.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

65.     No previous application has been made for the relief requested herein.

## COUNT II
## <u>VIOLATION OF THE NJLAD</u>

66.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

67.     Defendant, AT&T Services, Inc., intentionally discriminated against Plaintiff because of his age.

68.     Defendant, AT&T Services, Inc., has violated the NJLAD by committing the foregoing acts of discrimination against Plaintiff, including selecting Plaintiff for surplus, failing to select him for open positions for which he was qualified, and terminating his employment.

69.     Defendant's violations of the NJLAD were intentional and willful and warrant the imposition of punitive damages.

70.     Members of Defendant's upper management had actual participation in, and/or willful indifference to, Defendant's discriminatory conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

71.     As a direct and proximate result of Defendant's discriminatory conduct, in violation of the NJLAD, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

72.     Plaintiff is now suffering and will continue to suffer irreparable injuries, including monetary damages, past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering as a result of Defendant's discriminatory conduct unless and until the Court grants the relief requested herein.

73.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff, George Levy, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, AT&T Services, Inc.:

a.     declaring the acts and practices complained of herein to be a violation of the ADEA;

b.     declaring the acts and practices complained of herein to be a violation of the NJLAD;

c.     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

d.     enjoining and restraining permanently the violations alleged herein;

e.     awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendant's unlawful conduct;

f.     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

g.     awarding liquidated damages to Plaintiff;

h.     awarding punitive damages to Plaintiff;

i.     awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

j.      awarding Plaintiffs such other damages as are appropriate under the ADEA and

NJLAD; and,

k.      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Dated:  May 26, 2021     BY:   _____

Daniel S. Orlow, Esq.
110 Marter Avenue, Suite 502
Moorestown, NJ 08057
Attorneys for Plaintiff, George Levy

Exhibit "A"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | ◌ FEPA<br>X   EEOC | |

| STATE OR LOCAL AGENCY: |
|---|

| NAME (Indicate **Mr.**, Ms., Mrs.)<br>**George R. Levy** | HOME TELEPHONE NUMBER *(Include Area Code)* ▉ |
|---|---|

| STREET ADDRESS<br>▉ | CITY, STATE AND ZIP<br>**Aberdeen, NJ 07747** | DATE OF BIRTH<br>▉ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**AT&T, Inc.**<br>**AT&T Services, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>**>200,000** | TELEPHONE (Include Area Code)<br>**(210) 821-4105** |
|---|---|---|

| STREET ADDRESS<br>**Charging Party's Work Locations**<br>**One AT&T Way**<br>**AT&T Corporate Headquarters**<br>**208 S. Akard Street** | CITY, STATE AND ZIP<br><br>**Bedminster, NJ 07921**<br><br>**Dallas, TX 75202** | COUNTY<br><br>**Somerset, NJ**<br><br>**Dallas, TX** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>◌ Race  ◌ Color  ◌ Sex  ◌ Religion  ◌ National Origin<br>◌ Retaliation  **X** Age  ◌ Disability  ◌ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*                               *Latest*<br>**07-24-20 (ongoing)** |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was employed by AT&T, Inc. and its controlled subsidiary/payroll company, AT&T Services, Inc. (together, "AT&T"), from November 16, 1998 until the date of my unlawful termination of employment, effective July 24, 2020.

At the time of my termination, I held the position of Lead Channel Manager. I last reported to Scott Corbin II (45[1]), Associate Director, Marketing Technology. I began reporting to Corbin in or about April 2020. Corbin reported to Aarthi Reddy (48), Assistant Vice President, Market Research and Analysis. Reddy reported to Pam Abel, Vice President, Distribution, Compensation and Analytics (52). Prior to reporting to Corbin, I had reported to Reddy and Al Jones, Director (58).

At the time of my surplus notification, I was age sixty-three (63) with more than twenty-one (21) years of service at AT&T. To my knowledge, I was one (1) of two (2) employees reporting to Corbin who was notified of surplus and terminated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*8/13/20*                *George Levy*<br>*Date*        *Charging Party Signature* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

---

[1] All ages herein are approximations.

2.      Harm Summary

I believe that AT&T discriminated against me because of my age (63) as part of a centrally planned, corporate-wide (*i.e.,* AT&T, Inc. and the many subsidiary entities under its direction and control, self-identified as the AT&T "family of companies") involuntary group termination program, implemented in waves from at least March 1, 2013 and still continuing, intended to "transform" an aging workforce, and which intended to, and did, eliminate older workers and replace them with younger ones, while falsely and fraudulently telling the older workers that they had released claims under the Age Discrimination in Employment Act ("ADEA") when AT&T knew that they had not.

B.      Statutes Violated and Basis for Allegations

I allege that Respondents have discriminated against me based on my age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), as set forth herein.

Evidence of discrimination includes, but is not limited to (in addition to what is set forth herein):

1)   I was a highly qualified and dedicated employee for AT&T for more than twenty-one (21) years.  My extensive knowledge, skills, experience, and record of achievement as a successful employee were recognized by AT&T.  Among other things, I received annual merit increases, performance-based bonuses, awards, and positive annual performance reviews.

2)   In or about February 2020, in a phone call with Jones, he asked me how old I was.  I responded that I was sixty-two (62).

3)   Multiple employees at AT&T asked me how old I was.

4)   I was not given the support and resources that younger employees were given to do my job, despite my workload having been increased.

5)   In or about March 2020, I was instructed to train younger employees, including Edgar Reyes (35), Specialist Sales Support, and Mayra Ruiz (38), Specialist Sales Support, on my job duties and responsibilities.

6)   On or about July 1, 2020, Imshaan Somani (35), Lead Marketing Technology Manager, was transferred to report to Corbin.

7)   On July 7, 8, and 9, Corbin instructed me to train Somani (35) to do my job duties and responsibilities.

8)   On July 10, 2020, AT&T notified me that the position that I held was being eliminated, that I was being placed on "surplus status," and that my employment would be terminated within two (2) weeks.  I was told that I should not bother looking for an internal position, as there were no open positions.  Corbin told me he did not know the reason I was selected for surplus, and that the decision had been made at a higher level at AT&T.

9)   I was to remain employed until July 24, 2020, at which time my employment was to be terminated if I had not been selected by AT&T for, and accepted, another position at

AT&T.

10) The statement that my position was being eliminated was false.

11) On July 10, 2020, AT&T also presented to me a "General Release and Waiver" which, if signed, fraudulently purported to release all claims against AT&T, including federal age discrimination claims with respect to my employment and (likely future) termination of employment. The General Release and Waiver was simultaneously accompanied by an "ADEA Listing" dated July 7, 2020 which, among other things, provided no information as to the identity of individuals actually terminated by AT&T.

12) On July 10, 2020, AT&T presented me with a purported General Release and Waiver and accompanying "ADEA Listing." Among other things, and without limitation:

   a) The General Release and Waiver and its accompanying materials purport to specify criteria but in fact provide no meaningful information as to the criteria used for selecting employees for surplus notification. The General Release and Waiver and its accompanying materials stated the following with regard to the criteria used for selecting employees for surplus notification: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc. Severance Pay Plan include some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

   b) The General Release and Waiver and its accompanying materials provided no information explaining the specific reason(s) for my selection for surplus notification.

   c) The General Release and Waiver stated falsely that I was provided with the ages and job titles of those designated to participate in the Severance Plan. In fact, as of that date, no one identified on the ADEA Listing was eligible for the Severance Plan.

   d) The information provided in the "ADEA Listing" was for a "Decisional Unit" identified as: "The following positions in VP Pam Abel's Sales Ops and Compensation organization Director Sales Operations Sales Planning Manager II positions within AVP Aarthi Reddy and Sr. Sales Planning Mgr Michael Mahan's organizations L2 positions that support sales compensation reporting processes within AVP Aarthi Reddy's organization." There was no information provided as to how this Decisional Unit was determined.

   e) The ADEA Listing purports to but in fact does not provide meaningful information.

   f) The ADEA Listing does not indicate who among the employees was terminated.

   g) AT&T failed to provide required information and disclosures under the OWBPA.

13) The average age of the Lead Channel Manager employees included in the Decisional Unit was 42. The average age of the Lead Channel Manager employees in the Decisional Unit selected for surplus was 47.5.

14) Per the ADEA Listing, there were five (5) employees who held Lead Channel Manager positions in the Decisional Unit, two (2) of whom, including me, were selected for surplus. The Lead Channel Manager employees selected for surplus were ages sixty-three (63) and thirty-two (32). I was the oldest Lead Channel Manager employee in the Decisional Unit. There were two (2) Lead Channel Manager employees younger than age forty (40) in the Decisional Unit, ages twenty-six (26) and thirty-one (31), each of whom was not selected for surplus and was retained by AT&T.

    a) Based on, *inter alia,* my knowledge, skills, and positive track record with AT&T, including in particular as a Lead Channel Manager, I believe I was at least as, or better, qualified than substantially younger employees who held that position, were not selected for surplus, and were retained by AT&T.

15) AT&T failed to include correct information regarding certain employees on the ADEA Listing.

    a) The ADEA Listing that I received should have, and did not, show that Mary Orns (32), Lead Channel Manager, who was selected for surplus, was transferred to another position, was not terminated, and was retained by AT&T.

    b) The ADEA Listing that I received should have, and did not, include Imshaan Somani (35), Lead Marketing Technology Manager, a substantially younger employee who was not selected for surplus and was retained by AT&T.

    c) The ADEA Listing that I received should have, and did not, include Mark Pursley (52), Lead Marketing Manager, a substantially younger employee who was not selected for surplus and was retained by AT&T.

16) AT&T retained several younger employees reporting to Corbin who held positions for which I was more qualified. Based on, *inter alia,* my knowledge, skills, and positive track record with AT&T, including in particular my eleven (11) years as a Lead Channel Manager and Senior Marketing Manager employee, I believe I was better qualified than these younger individuals who were retained. Without limitation:

    a) When I was surplussed, AT&T retained the following substantially younger employees, without limitation, in positions for which I was qualified, if not more qualified, reporting to Corbin:

        i. Levry Severino (31), Lead Channel Manager;
        ii. Mary Orns (32), Lead Channel Manager;
        iii. Imshaan Somani (35), Lead Marketing Technology Manager;
        iv. Elaine Arundell (48), Principal, Business Management;
        v. Mark Pursley (52), Lead Marketing Manager.

17) After July 10, 2020, AT&T did not select me for any open and available positions with AT&T for which I was qualified, and I received no response to my email asking if there were any opportunities to rejoin the team.

18) On July 24, 2020, AT&T terminated my employment.

19) AT&T replaced me with Somani (35). I was more qualified and experienced to perform my job duties and responsibilities than the substantially younger employee to whom they were assigned.

20) AT&T retained several younger Lead Channel Manager employees.  Based on, *inter alia,* my knowledge, skills, and positive track record with AT&T, including in particular my more than eleven (11) as a Lead Channel Manager and Senior Marketing Manager employee, I believe I was better qualified than younger individuals who were retained. Without limitation:

   a) When I was terminated, AT&T retained the following younger employees, without limitation, in the Lead Channel Manager position, reporting to Corbin:

      i. Jay Miller (26);
      ii. Levry Severino (31);
      iii. Mary Orns (32);
      iv. John Keeney (58).

   b) When I was terminated, AT&T retained the following younger employees, without limitation, in the Lead Channel Manager position, under Abel:

      i. Jay Miller (25);
      ii. Meredith Johnson (30);
      iii. Levry Severino (31);
      iv. Mary Orns (32);
      v. Jake Feigeles (35);
      vi. Thomas McDonald (35);
      vii. Lauren Knish (40);
      viii. Jeffrey Sly (45);
      ix. Vanessa Shane (52);
      x. John Keeney (58).

21) I was the oldest employee reporting to Corbin.

22) I was the only Lead Channel Manager in the Decisional Unit who was terminated effective July 24, 2020.

23) I was one (1) of two (2) employees reporting to Corbin who was terminated.

24) The other employee reporting to Corbin who was surplussed and terminated was Adrienne Bresnahan (60), Senior Data Analysis.

25) My termination date of July 24, 2020 was the commencement of the ninety (90) day period for me to consider the General Release and Waiver.  AT&T provided me at that time <u>no disclosures</u> required for an involuntary group termination pursuant to the Older Workers Benefit Protection Act ("OWBPA").

26) As of the termination of my employment on July 24, 2020, I was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

   a) AT&T never provided me with the disclosures required by the OWBPA.

   b) AT&T never provided me with information indicating that it was the job titles and ages of those who had actually been terminated from employment.

   c) The "ADEA Listing" that was given to me on July 10, 2020, which was dated

July 7, 2020, was not given to me at the commencement of the General Release and Waiver consideration period as explicitly required by the OWBPA.

    d)  AT&T failed to provide to me in a manner calculated to be understood by the average individual eligible to participate in the Severance Pay Plan program the disclosures required for a knowing and voluntary waiver of my claims and rights under the ADEA, including my right to bring an age discrimination suit against them and to initiate and/or participate in a collective and/or representative action.

27) I refused to sign the General Release and Waiver.  The purported waiver of my claims and right to bring and/or participate in a collective and/or representative action under the ADEA was invalid, unenforceable, and in violation of the ADEA, as amended by the OWBPA.

28) My performance was positive and did not warrant my selection for surplus, the fact that I was not selected for open positions for which I was qualified, or the termination of my employment.

29) Upon information and belief, AT&T's "2020" group involuntary termination program, including its centrally determined policies and procedures, had a disparate impact on older workers.

30) AT&T has demonstrated an intent to terminate the employment of older workers, including me, and retain younger workers instead.

31) AT&T fraudulently instructed me and other older workers to consider signing a General Release and Waiver that they knew to be in invalid, unenforceable, and in violation of the OWBPA.

32) On January 11, 2019, a federal judge in the Eastern District of Pennsylvania ruled that AT&T's General Release and Waiver was invalid and unenforceable for failure to comply with the ADEA, as amended by the OWBPA.

33) Despite the federal judge's ruling, AT&T continued to use the same General Release and Waiver that was found to be invalid and unenforceable for failure to comply with the ADEA, as amended by the OWBPA.

34) AT&T has a corporate culture of age bias and a public record of egregious age discrimination.

    a)  AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed that AT&T has an aging workforce and had a need to reinvent the company.  *See Gearing Up for the Cloud, AT&T Tells Its Workers: Adapt or Else,* http://www.nytimes.com, February 13, 2016.  As part of this reinvention, AT&T came up with a plan to "retool" its aging workforce by the year 2020.  *Id.*

    b)  As part of its plan – variously called "Vision 2020," "Workforce 2020;" "Workplace 2020" – AT&T has publicly expressed age-based stereotypes and has acknowledged that those age-based stereotypes are considered in workplace decisions.  *See, e.g., AT&T Prepares for a New World of Work: The Changing Work Force (Part 2)*, https://networkingexchangeblog.att.com/enterprise-business (dividing its workforce by age, characterizing "Baby Boomers" as the workforce of "Yesterday," expressing without stated basis what is important to



"Baby Boomers" as distinct from "Gen X" and "Gen Y" workers, explicitly stating that AT&T is taking these age-based stereotypical "factors into account when planning for our workplace of the future," and stating that by 2015, 90% of new hires will be from Gen X and Gen Y).

35) Upon information and belief, since at least March 1, 2013, and continuing until the present, AT&T has, as part of its plan to transform its workforce, conducted vast involuntary terminations (referred to herein as "2020" terminations) with the intent and effect of eliminating older workers from its workforce. The massive and company-wide involuntary terminations were effectuated in waves across AT&T, Inc.'s various controlled/for payroll-purposes subsidiaries and in accordance with centrally planned, from the top, corporate-wide policies and procedures infected with age bias and, upon information and belief, causing a disparate impact on older workers.

    a) Upon information and belief, as part of the "2020" terminations, AT&T, per its policies and procedures, notified certain workers that they were being placed on surplus status and would be terminated if unable to secure another position with AT&T within two (2) weeks. Employees were selected for surplus based on centrally determined, company-wide ill-defined and/or subjective criteria in a process infected with age bias. Without limitation, employees were assigned a rating for "skills," but the "skills" supposedly assessed were not those necessary to perform an actual job but a job of the "future" per "Vision 2020," thus permitting managers to assign ratings based on the ageist stereotype that older workers could not or would not acquire "high tech" skills necessary for these future jobs.

    b) The process by which certain employees on surplus status were able to secure another job within AT&T was infected with age bias. Among other things, the centrally determined, company-wide surplus policies and procedures specifically provided that managers could at their complete discretion notify certain – but not all – employees on surplus status of job openings by sending to them a Career Opportunity Notice ("CON"), thus permitting managers to act on unchecked age-bias and notify younger workers only of open positions. Moreover, per AT&T policies and procedures, it was automatically made known to a hiring manager when an application was received for an open job if the application was submitted by an employee whom AT&T had selected for surplus status, thus tainting that employee's application prospects.

    c) If an employee has not secured a position at the end of the two (2) week period, an employee who had been placed on surplus status was terminated by AT&T. AT&T offered such terminated employees severance in exchange for signing what purported to be a general release of all claims (including their right to bring suit, and/or participate in a collective/representative action under the ADEA). AT&T knew that what it falsely told the older workers was a general release of all claims was not a release and waiver of an older worker's right to bring and/or participate in an individual and/or collective action alleging age discrimination under the ADEA because the General Release and Waiver did not comply with the disclosure requirements of the OWBPA. Without limitation, **AT&T provided to the older workers no information as to who was actually being terminated and who was being retained.**

    d) AT&T affirmatively represented to the older, terminated workers that it had provided to them at the time of the surplus notification the ages and job titles of



those "designated to participate in the Plan." <u>This was patently false</u>. The Plan referenced was the AT&T, Inc. Severance Pay Plan; to be eligible to participate in it, among other things, one had to have been terminated from employment. The list provided did not identify anyone who had actually been terminated.  In fact, some employees who had been placed on surplus status and listed on the ADEA Listing were able to find other positions at AT&T within the two (2) week period.  **Thus, AT&T fraudulently induced older workers to release rights pertaining to their termination, while hiding from those older workers information as to the ages of who was terminated and who was retained.**

e)  Upon information and belief, AT&T has for years, and at least since March 1, 2013, and continuing through the present, carried out in waves its "2020" terminations with the intent and effect of terminating older workers from its workforce, while retaining and hiring younger ones.  AT&T has intentionally kept the older workers in the dark about the scope of its terminations and selection procedures, and has engaged in a massive fraud whereby older workers were deceived as to the information they were receiving regarding who was terminated and who was retained, and falsely led the older workers to believe that they had waived their right to bring an action against AT&T for age discrimination.

36) Since at least 2013 until the time of my termination, AT&T has actively recruited outside hires.

37) I was notified by AT&T that I was placed on surplus status, terminated, and presented with a fraudulent General Release and Waiver as part of AT&T's "2020" terminations.

38) AT&T selected me for surplus, failed to select me for any open and available jobs for which I was qualified, terminated my employment, and presented me with a false and fraudulent General Release and Waiver because of my age.

C.    Respondents' Stated Reasons

AT&T has stated that I was placed on surplus status because my position was being eliminated. This is false and a pretext for age discrimination.  Following the surplus, according to AT&T's own documents, there remained at least three (3) Lead Channel Manager employees in my "Decision Unit," all of whom were younger than me.  Further, there remained several Lead Channel Managers, including at least three (3) who reported to Corbin, and at least an additional two (2) employees reporting to Corbin who performed functions similar to what I performed who held different job titles.

AT&T has not stated a reason why AT&T failed to select me for any open and available positions for which I was qualified.

AT&T has stated that I was to be terminated if I was unable to secure another position within two (2) week of my being placed on surplus status.  AT&T gave a false and pretextual reason for my selection for surplus; AT&T has given no reason for its failure to select me for any one of the open positions for which I was qualified.

AT&T has not stated any reason for its fraudulent representation to me that by signing the General Release and Waiver I would release and waive my claims and rights under the ADEA, including my right to bring and/or participate in a collective and/or representative action, when AT&T knew that they had presented me with a General Release and Waiver that was invalid,

unenforceable, and in violation of the OWBPA.

D.    Class Charge

I allege that AT&T has engaged in a pattern and practice of discriminating against older workers in violation of the ADEA. In that regard, I bring this Charge as a class and pattern and practice Charge on behalf of myself and any and all current or former employees, age forty (40) and over who have been adversely affected by AT&T's discriminatory practices (as a result of disparate treatment or disparate impact) in connection with its company-wide group terminations, implemented in waves pursuant to the same centrally determined and corporate-wide policies and procedures, since at least March 1, 2013 and continuing through the present, including but not limited to being placed on surplus status; being denied opportunities to secure or being rejected for open positions; and/or being terminated.

I further allege that AT&T has violated the ADEA, as amended by the OWBPA, and that the language, terms, and manner of presentation of AT&T's General Release and Waiver agreements utilized during the company-wide involuntary group terminations since at least March 1, 2013 and continuing through the present, is part of a pattern and practice to adversely treat and disparately impact me and similarly situated employees age forty (40) and over, and was a scheme in violation of the ADEA and OWBPA with the intention of deceiving me and other older workers into believing that we could not sign the General Release and Waiver, collect severance, and bring an age discrimination case against AT&T.  In that regard, I bring this Charge as a class Charge on behalf of those individuals age forty (40) and over whom AT&T terminated as part of the involuntary group terminations since at least March 1, 2013, and continuing through the present, who were presented with a General Release and Waiver which purported to be a general release of all claims, including for age discrimination under federal law and the right to bring and/or participate in a collective and/or representative action under the ADEA, but which failed to comply with the OWBPA.

# Exhibit "B"

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   **George R. Levy**
**Console Law Offices LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**

From:   **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

|   | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-05481** | **Legal Unit** | **(267) 589-9707** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

March 3, 2021

*(Date Issued)*

Enclosures(s)

cc:   **Marybeth Dunne**
**AT&T Sr. EEO Consultant**
**AT&T SERVICES**
**308 S AKARD ST**
**RM 1720**
**Dallas, TX 75202**

**Emily R. Derstine Friesen, Esq.**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**