IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

GEORGE LEVY,

                    Plaintiff,

          v.

AT&T SERVICES, INC.,

                    Defendant.

No. 3:21-cv-11758-FLW-LHG

**Oral Argument Requested**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................2

    A.      Levy received three notice emails containing the material terms
        of the Agreement ...................................................................2

    B.      Levy accessed the Agreement on AT&T's intranet............................4

    C.      Levy did not exercise his right to opt out of the Agreement, and
        continued working for AT&T beyond the opt-out deadline ...............5

III.    THIS COURT SHOULD COMPEL ARBITRATION ..................................6

    A.      The Federal Arbitration Act requires enforcement of arbitration
        agreements according to their terms ......................................6

    B.      The parties formed a valid and enforceable agreement to
        arbitrate ..........................................................................9

        1.      AT&T and Levy mutually assented to the Agreement.............9

        2.      Mutual promises to arbitrate constitute sufficient
            consideration to support the Agreement ..................13

    C.      The scope of the Agreement covers Levy's claims ..........................14

    D.      The Court should stay this action pending arbitration ......................16

IV.     CONCLUSION............................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                     **Page(s)**

*Argun v. Neiman Marcus Group, Inc.*,
    Civ. No. 19-14548 (KM)(MAH),
    2020 WL 1272247 (D.N.J. Mar. 16, 2020) .....................................................8, 9

*AT&T Mobility Servs. LLC v. Inzerillo*,
    No. 4:17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018)...........................................1

*AT&T Mobility Servs. LLC v. Jean-Baptiste*,
    No. 17-11962, 2018 WL 3425734 (D.N.J. July 16, 2018),
    *appeal dismissed sub nom. AT&T Mobility Servs. LLC v. Baptiste*,
    No. 18-2999, 2019 WL 1163844 (3d Cir. Feb. 26, 2019).................................11

*AT&T Mobility Servs. LLC v. Payne*,
    No. 3:17-cv-00649-CRS,
    2018 U.S. Dist. LEXIS 25817 (W.D. Ky. Feb. 16, 2018)...................................1

*Bolden v. AT & T Servs., Inc.*,
    350 F. Supp. 3d 1029 (D. Kan. 2018)...................................................................1

*Butler v. AT&T*,
    No. 1:18-cv-01749-PAB-SKC (D. Colo. Mar. 18, 2019) ...................................1

*Carnes v. AT&T, Inc.*,
    No. 2:18-CV-01639-ACA,
    2019 WL 2268977 (N.D. Ala. May 28, 2019) .....................................................1

*Cervalin v. Universal Global, Inc.*,
    No. A-0974-20, 2021 WL 2793593
    (N.J. Super. Ct. App. Div. Jan. 19, 2021) (unpublished) ...................................12

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001).............................................................................................6

*Clean Earth, Inc. v. Endurance Am. Ins.*,
    Civil Action No. 15-6111(FLW), 2016 WL 5422063
    (D.N.J. Sept. 28, 2016) (Wolfson, J.) .................................................................14

*CompuCredit Corp v. Greenwood*,
    565 U.S. 95 (2012)...............................................................................................7

*Cook v. Nordstrom, Inc.*,
  Civil No.13-5402, 2013 WL 6633522 (D.N.J. Dec. 17, 2013) ........................15

*Cornoyer v. AT&T Mobility Servs., LLC*,
  No. CIV 15-0474 JB/WPL, 2016 U.S. Dist. LEXIS 140109
  (D.N.M. Oct. 5, 2016)............................................................................................1

*Couch v. AT&T Servs., Inc.*,
  No. 13-CV-2004 (DRH)(GRB), 2014 U.S. Dist. LEXIS 178889
  (E.D.N.Y. Dec. 31, 2014) ....................................................................................1

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..............................................................................................8

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..........................................................................................7

*Fernandez v. Primelending*,
  Civil Action No. 20-31 (FLW), 2020 WL 6042119 (D.N.J. Oct. 9,
  2020) (Wolfson, J.) (unpublished)..................................................................9, 11

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
  773 A.2d 665 (N.J. 2001) ...................................................................................15

*Gomez v. PDS Tech, Inc.*,
  Civ. No. 2:17-12351, 2018 WL 1871461 (D.N.J. Apr. 19, 2018)......................15

*Horowitz v. AT&T Inc.*,
  No. 3:17-cv-4827-BRM-LHG, 2019 WL 77331 (D.N.J. Jan. 2,
  2019) (unpublished)...................................................................................1, 12, 13

*Hubbard v. Comcast Corp.*,
  Civil No. 18-16090 (RBK)(KMW), 2020 WL 4188127 (D.N.J.
  July 21, 2020).........................................................................................................9

*Jasicki v. Morgan Stanley Smith Barney LLC*,
  No. A-1629-19T1, 2021 WL 162004 (N.J. Super. Ct. App. Div.
  Jan. 19, 2021) (unpublished) .....................................................................7, 11, 12

*Jayasundera v. Macy's Logistics & Ops.*,
  No. 14-cv-7455 (SDW)(SCM), 2015 WL 4623508 (D.N.J. Aug. 3,
  2015) (unpublished)............................................................................................13

*Karzon v. AT&T, Inc.*,
    No. 4:13-CV-2202 (CEJ), 2014 U.S. Dist. LEXIS 1516 (E.D. Mo.
    Jan. 7, 2014) ................................................................................................2

*Kester v. BellSouth Telecomm., Inc.*,
    No. 3:18-cv-01469-TJC-MCR (M.D. Fla. Aug. 2, 2019) ...................................1

*Lloyd v. Hovensa, LLC*,
    369 F.3d 263 (3d Cir. 2004) ..............................................................................16

*Matos v. AT&T Corp.*,
    No. 3:18-CV-02591-M-BK (N.D. Tex. Sept. 9, 2019) .......................................1

*McMurray v. AT&T Mobility Servs., LLC*,
    Civ. No. 21-414 (DWF/DTS) (D. Minn. Aug. 2, 2021).....................................1

*Mitnick v. Yogurtland Franchising, Inc.*,
    Civil Action No. 17-00325 (FLW), 2017 WL 3503324 (D.N.J.
    Aug. 16, 2017) (Wolfson, J.) (unpublished)....................................................8, 16

*Powe v. AT&T*,
    No. 3:15-cv-00022-GFVT (E.D. Ky. Mar. 25, 2016) .........................................1

*Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*,
    913 F.3d 200 (1st Cir. 2019)................................................................................1

*Schmell v. Morgan Stanley & Co, Inc.*,
    Civ. No. 17-13080, 2018 WL 4961469 (D.N.J. Oct. 15, 2018)
    (unpublished) ...................................................................................................12

*Skuse v. Pfizer, Inc.*,
    244 N.J. 30 (N.J. 2020).............................................................................*passim*

*Thompson v. AT&T Mobility Servs. LLC*,
    No. 5:17-CV-139-FL, 2017 U.S. Dist. LEXIS 97899 (E.D.N.C.
    June 26, 2017)....................................................................................................1

*Townsend v. Pinnacle Entm't*,
    457 F. App'x 205, 207 (3d Cir. 2012) ...........................................................6, 8

*Uszak v. AT&T Mobility Servs. LLC*,
    658 F. App'x 758 (6th Cir. 2016) .......................................................................1

*Versmesse v. AT&T Mobility LLC,*
    No. 3:13 CV 171, 2014 U.S. Dist. LEXIS 27816
    (N.D. Ind. Mar 4, 2014) .......................................................................1

*Villano v. TD Bank,*
    No. 11-cv-6714, 2012 WL 3776360
    (D.N.J. Aug. 29, 2012) (Wolfson, J.) ...........................................8, 14

*Winters v. AT&T Mobility Servs., LLC,*
    No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804
    (C.D. Ill. July 10, 2017) .....................................................................1

**Statutes**

9 U.S.C. § 2 ...........................................................................................7

9 U.S.C. § 3 ....................................................................................8, 16

9 U.S.C. § 4 ...........................................................................................6

N.J. Stat. Ann. § 2A:23B-6(a) ..............................................................7

**Other Authorities**

Restatement (Second) of Contracts § 30 ..............................................12

## I.   <u>INTRODUCTION</u>

Defendant AT&T Services, Inc. ("AT&T" or the "Company"), by counsel and pursuant to 9 U.S.C. § 3, hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay Proceedings.

Plaintiff George Levy sued AT&T in violation of his contractual promise to arbitrate.  This Court should compel his claims to arbitration.  Numerous federal and state courts across the country – including the District Court for the District of New Jersey – have enforced AT&T's arbitration agreement under similar circumstances where an employee refused to honor his or her contractual obligation.[1]

---

[1] *See, e.g., Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200 (1st Cir. 2019) (affirming district court's order compelling arbitration); *Uszak v. AT&T Mobility Servs. LLC*, 658 F. App'x 758 (6th Cir. 2016) (same); *McMurray v. AT&T Mobility Servs., LLC*, Civ. No. 21-414 (DWF/DTS) (D. Minn. Aug. 2, 2021); *Butler v. AT&T*, No. 1:18-cv-01749-PAB-SKC (D. Colo. Mar. 18, 2019); *Carnes v. AT&T, Inc.*, No. 2:18-CV-01639-ACA, 2019 WL 2268977 (N.D. Ala. May 28, 2019); *Kester v. BellSouth Telecomm., Inc.*, No. 3:18-cv-01469-TJC-MCR (M.D. Fla. Aug. 2, 2019); *Matos v. AT&T Corp.*, No. 3:18-CV-02591-M-BK (N.D. Tex. Sept. 9, 2019); *Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2019 WL 77331 (D.N.J. Jan. 2, 2019) (compelling arbitration on an individual basis) (unpublished); *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029 (D. Kan. 2018); *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-cv-00649-CRS, 2018 U.S. Dist. LEXIS 25817 (W.D. Ky. Feb. 16, 2018); *AT&T Mobility Servs. LLC v. Inzerillo*, No. 4:17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018); *Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804 (C.D. Ill. July 10, 2017); *Thompson v. AT&T Mobility Servs. LLC*, No. 5:17-CV-139-FL, 2017 U.S. Dist. LEXIS 97899 (E.D.N.C. June 26, 2017); *Cornoyer v. AT&T Mobility Servs., LLC*, No. CIV 15-0474 JB/WPL, 2016 U.S. Dist. LEXIS 140109 (D.N.M. Oct. 5, 2016); *Powe v. AT&T*, No. 3:15-cv-00022-GFVT (E.D. Ky. Mar. 25, 2016); *Couch v. AT&T Servs., Inc.*, No. 13-CV-2004 (DRH)(GRB), 2014 U.S. Dist. LEXIS 178889 (E.D.N.Y. Dec. 31, 2014); *Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171,

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2021, Levy sued AT&T, alleging discrimination under the Age Discrimination in Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD").  *See* Compl. ¶¶ 58–73.  Effective February 7, 2012, however, Levy agreed to AT&T's Management Arbitration Agreement (the "Agreement").  By doing so, he agreed that "any dispute to which [the Agreement] applies," including those he asserts here, "will be decided by final and binding arbitration instead of court litigation."  Declaration of Brandy Giordano ("Giordano Decl.") ¶ **13**, Exh. 2.

### A.   Levy received three notice emails containing the material terms of the Agreement.

On December 3, 2011, AT&T sent an email to Levy at his Company-issued email address, GL2138@us.att.com,[2] advising him of a voluntary arbitration agreement that would apply to any future claims he might bring against the Company (or the Company might bring against him) related to his employment.  *See* Giordano Decl. ¶ 18, Exh. 4. The email explained, "you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement" if Levy did not opt out of the voluntary program within 60 days (by 11:59 p.m. Central Standard Time on

---

2014 U.S. Dist. LEXIS 27816 (N.D. Ind. Mar 4, 2014); *Karzon v. AT&T, Inc.*, No. 4:13-CV-2202 (CEJ), 2014 U.S. Dist. LEXIS 1516 (E.D. Mo. Jan. 7, 2014).

[2] The GL2138@us.att.com email address is one of two addresses at which Levy could receive email at work.  *See* Declaration of Michael D. Albert ¶ 4.

February 6, 2012).  *Id*. ¶ 11, Exh. 1.  The email provided Levy with instructions on how to opt out in bold-face type.  *Id*.[3]

The email also advised Levy that the decision whether to accept the Agreement or opt out was "entirely up to [him]," and that there would be "no adverse consequences for anyone opting out of the [Agreement]."  *Id*.  The email further stated, "[t]o help [him] make [his] decision, **it was very important for [Levy] to review the Management Arbitration Agreement linked to this email**," and provided a link – using the words "[c]lick here to review" – to a web page containing the text of the Agreement itself.  *Id*. (emphasis in original).

Levy received follow-up emails at his Company-issued email address on December 15, 2011, and January 16, 2012, both identical in substance to the first email.  *Id*. ¶ 18.  All three emails unequivocally explained that Levy would accept the offer to mutually arbitrate claims by failing to opt out before the February 6, 2012 deadline.  *Id*.

Levy was expected to – and did – read and respond appropriately to emails delivered to his Company-issued email account.  *See* Declaration of Margaret Rooney-McMillen ("Rooney-McMillen Decl.") ¶ 7.  AT&T also took steps to ensure

---

[3] The opt-out process for employees was simple: it involved electronically registering that decision on a web page set up for that sole purpose.  Thousands of Levy's peers registered their decision to opt out of the Agreement before the February 6, 2012 deadline.  Giordano Decl. ¶ 25.  Levy did not.  *Id*. ¶ 26.

that employees received notice of the Agreement.  Any automated responses to the emails just described – which would indicate if there were problems with electronic delivery (*e.g.*, an "undeliverable message"), or if the recipient had set up an automated "out of office" reply – were delivered to a central email inbox.  *See* Giordano Decl. ¶ 21.  None of the three emails to Levy generated an automatic reply. *Id*. ¶ 23.

## B.   Levy accessed the Agreement on AT&T's intranet.

On January 12, 2012, Levy accessed the full text of the Agreement on AT&T's corporate intranet.  *See* Giordano Decl. ¶ 20, Exh. 5.  To do so, he logged into the Company's system using his unique username, GL2138, and confidential password.[4]  *Id*. ¶ 14, Exh. 3.

By its terms, the Agreement "is governed by the Federal Arbitration Act" and "applies to any claim that [Levy] may have against . . . any AT&T company.  *Id*., ¶ 13, Exh. 2.  Like the emails that preceded it, the Agreement clearly states the purpose and effect of the arbitration program:

> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation.  Arbitration is more informal than a lawsuit in court, and may be faster.  Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.  Under this Agreement, Arbitrators can award

---

[4] It is against corporate policy for employees to share their passwords used to access AT&T systems.  *See* Rooney-McMillen Decl. ¶ 8.

the same damages and relief that a court can award . . . This Agreement requires all [covered] disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial.

*Id*. The Agreement explicitly applies to "claims includ[ing] without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship," including claims arising under the ADEA "and state statutes and local laws, if any, addressing the same or similar subject matters[.]" *Id*.

The Agreement reiterates that failure to opt out of the arbitration program within 60 days would result in Levy accepting the Agreement's terms: "**Should you choose not to participate, you must opt out – that is, decline to participate in the arbitration process – no later than 11:59 p.m. Central Standard Time on Monday, February 6, 2012.  If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement.**" *Id*. (emphasis in original).  Like the emails Levy received, the Agreement also provided simple instructions for opting out.  *Id*.

### C.     Levy did not exercise his right to opt out of the Agreement, and continued working for AT&T beyond the opt-out deadline.

AT&T kept track of those employees who chose to opt out of the Agreement. *See* Giordano Decl. ¶ 25.  Thousands of AT&T employees did, but Levy did not.  *Id*. ¶¶ 25–26.

5

Rather than attempting to resolve his dispute with AT&T through arbitration, however, Levy filed this lawsuit.   Indeed, even after being reminded of his contractual obligations under the Agreement, he refused to submit his claims to arbitration.  *See* Declaration of Kenneth W. Gage ¶¶ 3–4, Exh. A.

## III.   THIS COURT SHOULD COMPEL ARBITRATION

The Agreement is an enforceable contract that covers the claims Levy asserts against AT&T.  This Court should therefore compel arbitration.

### A.   The Federal Arbitration Act requires enforcement of arbitration agreements according to their terms.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., permits a party to a written arbitration agreement to petition for an order compelling arbitration.  In relevant part, the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA applies to contracts in the employment context, except for those involving certain transportation workers.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001); *Townsend v. Pinnacle Entm't*, 457 F. App'x 205, 207 (3d Cir. 2012) ("Employment contracts, except those regarding the employment of

6

transportation workers, are within the ambit of the FAA") (citation omitted).  The FAA applies here because when he agreed to be bound by the Agreement, Levy's "job duties included assembling marketing collateral and interfacing with the team assigned to sell [AT&T's] wireline and wireless products allowing intrastate, interstate, and international telephone calls to be made by the federal government." Rooney-McMillen Decl. ¶ 4.[5]

The FAA declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  It reflects the "liberal federal policy favoring arbitration agreements" and, as the Supreme Court repeatedly has observed, the FAA requires courts to enforce arbitration agreements according to their terms.[6] *CompuCredit Corp v. Greenwood*, 565 U.S. 95, 98 (2012) (citation omitted); *see also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).  Accordingly, "any doubts

---

[5] Levy also acknowledges that AT&T is "engaged in an industry affecting interstate commerce."  Compl. ¶ 6.

[6] New Jersey also has a public policy favoring arbitration agreements, enshrined in the New Jersey Arbitration Act ("NJAA"), which, like the FAA, states that arbitration agreements are "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."  N.J. Stat. Ann. § 2A:23B-6(a); *see also Skuse v. Pfizer, Inc.*, 244 N.J. 30, 46 (N.J. 2020) ("The FAA and the NJAA 'enunciate federal and state policies favoring arbitration.'") (citation omitted); *Jasicki v. Morgan Stanley Smith Barney LLC*, No. A-1629-19T1, 2021 WL 162004, at *3 (N.J. Super. Ct. App. Div. Jan. 19, 2021) ("Our law strongly prefers the enforcement of arbitration agreements because 'arbitration is the favored method of resolving disputes.'") (citation omitted) (unpublished).

concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Townsend*, 457 F. App'x at 207 (citation omitted); *see also Villano v. TD Bank*, No. 11-cv-6714, 2012 WL 3776360, at *4 (D.N.J. Aug. 29, 2012) ("a motion to compel arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (citation omitted) (Wolfson, J.).

Under the FAA, the role of the district court is to determine if a valid arbitration agreement exists, and if so, whether the agreement captures the dispute at issue. *See Mitnick v. Yogurtland Franchising, Inc.*, Civil Action No. 17-00325 (FLW), 2017 WL 3503324, at *4 (D.N.J. Aug. 16, 2017) (Wolfson, J.) (unpublished). Where a dispute falls within the scope of a valid agreement, the FAA *requires* the district court to direct the parties to arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA further directs the court to stay all proceedings pending completion of arbitration. *See* 9 U.S.C. § 3.

**B.    The parties formed a valid and enforceable agreement to arbitrate.**

Whether the parties entered into a valid and enforceable arbitration agreement is determined under "traditional principles of state contract law, while also keeping in mind 'the strong federal policy in favor of arbitration.'" *Argun v. Neiman Marcus Group, Inc.*, Civ. No. 19-14548 (KM)(MAH), 2020 WL 1272247, at *7 (D.N.J. Mar. 16, 2020) (citation omitted). "Under New Jersey law, an agreement to arbitrate, like

any other contract, must be the product of mutual assent," and must be supported by consideration. *Hubbard v. Comcast Corp.*, Civil No. 18-16090 (RBK)(KMW), 2020 WL 4188127, at *5 (D.N.J. July 21, 2020); *Argun*, 2020 WL 1272247, at *8.

### 1.  AT&T and Levy mutually assented to the Agreement.

Under New Jersey law, "[t]o manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *Fernandez v. Primelending*, Civil Action No. 20-31 (FLW), 2020 WL 6042119, at *4 (D.N.J. Oct. 9, 2020) (compelling arbitration of NJLAD claim) (citation omitted) (Wolfson, J.) (unpublished).  Levy's assent was manifested by his failure to opt out after being given clear and unambiguous notice that not opting out constituted agreement to resolve disputes in arbitration.

In *Skuse v. Pfizer, Inc.*, 244 N.J. 30 (N.J. 2020), the New Jersey Supreme Court held that acceptance occurred under very similar circumstances, even where the employee was *not given the choice of opting out.*  First, Pfizer "clearly informed Skuse that by continuing to be employed for sixty days, she would waiver her right to pursue employment discrimination claims against Pfizer in court." *Id.* at 50. "[Skuse]," the Court observed, "had the option to leave her employment if it was unacceptable to her that most potential disputes between her and Pfizer would be arbitrated rather than resolved by a jury or judge." *Id.* at 51.  Here, Levy did not have

to leave his job to reject AT&T's offer but instead simply opt out, as the emails and the Agreement clearly communicated.

Second, like the Agreement and the emails here, the agreement and other communications in *Skuse* "clearly explained to Skuse the rights that she would relinquish if she . . . assented to the Agreement's terms." *Id.*  Those documents explained that arbitrators, not judges or juries, would decide disputes.  *Compare id.* at 51–52, *with* Giordano Decl. Exh. 2 ("Arbitration uses a neutral arbitrator instead of a judge or jury") and Exh. 1 ("Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes").  Those documents described what arbitration would entail and what the arbitrator's role would be.  *Compare Skuse* at 52, *with* Giordano Dec. Exh. 2 (arbitration "is more informal than a lawsuit in court, and may be faster . . . allows for more limited discovery than in court, and is subject to very limited review by courts . . . Arbitrators can award the same damages and relief that a court can award") and Exh. 1 (arbitration is "an alternative process for resolving disputes between the company and employees" that is "more informal than a lawsuit in court, and may be faster").

Those documents also described unambiguously that the types of claims asserted would be covered by the arbitration agreement.  *Compare Skuse* at 52, *with* Giordano Decl. Exh. 2 (the Agreement "applies to any claim that you may have

10

against [AT&T] . . . [and] also applies to any claim that [AT&T] may have against you," including but not limited to "those [claims] arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship") and Exh. 1 (failure to opt out of the Agreement "means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement"). Thus, the plaintiff's decision to remain with her employer meant that the arbitration agreement was "the result of the parties' mutual assent[.]" *Id*. at 48[7]; *see also Jasicki*, 2021 WL 162004, at *5 (relying on *Skuse* in compelling arbitration of NJLAD claim where metadata reflected that the employee received the employer's arbitration agreement via email, accessed it, did not opt-out during the 30-day opt-out period, and remained employed throughout the opt-out period); *Fernandez*, 2020 WL 6042119, at *4 ("it would strain reason to hold that Plaintiff, despite acknowledging that she read the document and understood the terms of the Agreement, did not intend to be bound by them") (Wolfson, J.)[8]; *see*

---

[7] Levy's anticipated reliance on *AT&T Mobility Servs. LLC v. Jean-Baptiste* – in which Judge Madeline Cox Arleo held that under New Jersey law, AT&T's Agreement is unenforceable in the absence of an "explicit indication of assent" – is unavailing. No. 17-11962, 2018 WL 3425734, at *3 (D.N.J. July 16, 2018), *appeal dismissed sub nom. AT&T Mobility Servs. LLC v. Baptiste*, No. 18-2999, 2019 WL 1163844 (3d Cir. Feb. 26, 2019). Respectfully, *Jean-Baptiste* was wrongly decided, but, in any event, it was effectively overruled by *Skuse*.

[8] Levy cannot distinguish *Fernandez* on the basis that plaintiff in that case physically clicked "Acknowledge" after reading the arbitration agreement. Here, as in *Skuse*, "[n]o writing – paper or digital – was designated by the employer to be the employee's expression of assent, let alone refused by [the employee]. Instead, the

*also Horowitz*, 2019 WL 77331, at *8 (compelling arbitration under AT&T's Agreement because "once a party receives notice [of the program], acceptance of the arbitration program may be signified by failing to opt out") (citation omitted); *Schmell v. Morgan Stanley & Co, Inc.*, Civ. No. 17-13080, 2018 WL 4961469, at *2 (D.N.J. Oct. 15, 2018) (compelling arbitration of NJLAD claim where plaintiff received the arbitration agreement via email, where "his continued employment without opting out constituted assent") (unpublished); *Jasicki*, 2021 WL 162004, at *5 (affirming grant of motion to compel arbitration where employee remained with her employer for the duration of the opt-out period and did not opt-out).[9]

Here, the parties mutually assented to the Agreement. AT&T's offer and consent to be bound is self-evident in its communication of the Agreement to Levy. Levy then accepted AT&T's offer by not exercising his right to opt out of it by the

---

prescribed form of assent here was the employee's decision to remain employed after the effective date of the arbitration policy." *Skuse*, 244 N.J. at 59. Nor would it matter if Levy contends that he did not actually read the Agreement, because failure to "read[] [the] contents" of the employer's communications "or the documents linked to it . . . ha[s] no impact on the analysis." *Id.* at 54; *see also Cervalin v. Universal Global, Inc.*, No. A-0974-20, 2021 WL 2793593, at *4 (N.J. Super. Ct. App. Div. Jan. 19, 2021) (compelling arbitration even where plaintiff "certified he had made no effort to read the arbitration clauses") (unpublished); *Jasicki*, 2021 WL 162004, at *5 ("an employee's failure to review the contents of an email does not invalidate an arbitration agreement" under New Jersey law).

[9] It is not even necessary for the offer of arbitration to expressly *state* that continued employment is the required form of acceptance. *See Horowitz*, 2019 WL 77331, at *8 (citing Restatement (Second) of Contracts § 30).

February 6, 2012 deadline.  *See* Giordano Decl. ¶ 26.  By not opting out, Levy was "agreeing to the arbitration process as set forth in the Agreement."  *Id*., Exh. 2.

### 2. Mutual promises to arbitrate constitute sufficient consideration to support the Agreement.

Sufficient consideration exists to support the Agreement because both AT&T and Levy promised to arbitrate any claims they may have against the other.  Under the Agreement, the mutual promise to arbitrate "applies to any claim that [Levy] may have against" AT&T, and similarly "applies to any claim that the Company or any other AT&T company may have against [Levy]."  *See* Giordano Decl. Exh. 2. When both parties agree to be bound by arbitration, adequate consideration exists. *See Horowitz*, 2019 WL 77331, at *9 ("consideration is also present in the Arbitration Agreement, since the agreement mutually obliges both parties to arbitrate all employment disputes and Plaintiffs have continued their employment with Defendants"); *Jayasundera v. Macy's Logistics & Ops.*, No. 14-cv-7455 (SDW)(SCM), 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) ("Sufficient consideration for the arbitration agreement also exists, as the agreement mutually obliges Macy's and Plaintiff to arbitrate all employment disputes and Plaintiff has continued his employment with Macy's") (unpublished).

Because the requirements for a valid contract under New Jersey law are met, Levy and AT&T are bound by their mutual promises to arbitrate covered claims, including those Levy brings here.

C.     **The scope of the Agreement covers Levy's claims.**

The Agreement covers Levy's claims, and AT&T's motion to compel those claims to arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Villano*, 2012 WL 3776360, at *4 (Wolfson, J.) (citation omitted). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111(FLW), 2016 WL 5422063, at *6 (D.N.J. Sept. 28, 2016) (citation omitted) (granting motion to compel arbitration where "the language of the arbitration clause at issue is certainly broad, because [of] the use of the phrases 'arising out of' or 'related to'") (Wolfson, J.) (citation omitted).

The Agreement applies to any dispute between AT&T and Levy that otherwise would be subject to litigation in court, with narrow exceptions not applicable here.[10] The Agreement states that Levy waives the right to litigate in court any claims "arising out of or related to [his] employment or termination of employment with the Company and any other disputes regarding the employment relationship," expressly including claims "arising under . . . [the] Age Discrimination in Employment Act . . . and state statutes and local laws, if any, addressing the same

---

[10] For example, the Agreement explicitly excludes from its scope claims for workers' compensation. *See* Giordano Decl. Exh. 2.

or similar subject matters[.]"  Giordano Decl. Exh. 2.  Levy's ADEA and NJLAD claims fall squarely within the scope of this language.  *See Cook v. Nordstrom, Inc.*, Civil No.13-5402 (RBK/AMD), 2013 WL 6633522, at *3 (D.N.J. Dec. 17, 2013) (compelling arbitration of NJLAD claim where by its terms, arbitration agreement covered claims arising under federal anti-discrimination laws such as the ADEA, "and other state and local statutes, addressing the same or similar subject matters"); *Gomez v. PDS Tech, Inc.*, Civ. No. 2:17-12351, 2018 WL 1871461, at *3 (D.N.J. Apr. 19, 2018) (compelling arbitration of New Jersey Conscientious Employee Protection Act ("CEPA") claim notwithstanding arbitration clause's omission of a reference to that statute, because "the clause applies broad language to the types of claims covered and provides clear examples, including anti-discrimination statutes akin to CEPA") (citing *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 672 (N.J. 2001) ("we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights")).

### D.      The Court should stay this action pending arbitration.

Levy's claims are within the scope of a valid arbitration agreement, so this Court should stay the case until his claims have been arbitrated.  The FAA is clear:

> [T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay*

> *the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .*

9 U.S.C. § 3 (emphasis added).  The Third Circuit Court of Appeals has interpreted this mandate literally, stating that dismissal in lieu of a stay is reversible error.  *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 271 (3d Cir. 2004); *see also Mitnick*, 2017 WL 3503324, at *8 ("Because Defendants requested a stay of proceedings, the Court shall, pursuant to 9 U.S.C. § 3, stay this action pending arbitration") (Wolfson, J.).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should order Levy to submit his claims to arbitration pursuant to the Agreement and stay this action pending completion of arbitration.

Dated: August 6, 2021                    Respectfully submitted,

<u>/s/ Daniel S. Richards</u>
Daniel S. Richards
Kenneth W. Gage*
Sara B. Tomezsko*
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorneys for Defendant*
*AT&T Services, Inc.*

\* *Pro Hac Vice* application submitted herewith