IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GEORGE LEVY,

        Plaintiff,

v.

AT&T SERVICES, INC.,

        Defendant.

No. 3:21-cv-11758-FLW-LHG

**Oral Argument Requested**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. LEGAL ARGUMENT............................................................................................1

    A. Levy Does Not Dispute The Evidence Proving He Had Notice of And Accepted The Agreement. ........................................................1

    B. By Failing to Opt Out by the Deadline, Levy Accepted AT&T's Agreement As A Matter Of Law. ........................................................4

        1. Failure to Opt Out Can Constitute Acceptance Under New Jersey Law. ....................................................................4

        2. New Jersey Law Does Not Require Additional Evidence of Assent. ..........................................................................7

        3. The Offer Need Not Specify That Continued Employment, In Addition To Failure To Opt-Out, Constitutes Assent...................................................................13

III. CONCLUSION....................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 131 S. Ct. 1740 (2011) ........................................................... 11, 12

*AT&T Mobility Servs. LLC v. Jean-Baptiste*,
   Civil Action No. 17-11962, 2018 WL 3425734 (D.N.J. 2018),
   *appeal dismissed*, No. 18-2999, 2019 WL 1163844 (3d Cir. 2019) .............. 9, 10

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
   219 N.J. 430 (2014) ....................................................................................... 12, 13

*Brennan v. CIGNA Corp.*,
   282 F. App'x 132 (3d Cir. 2008) ...................................................................... 3, 4

*Descafano v. BJ's Wholesale Club, Inc.*,
   No. 15-CV-7883(PGS)(DEA), 2016 WL 1718677 (D.N.J. Apr. 28,
   2016) ................................................................................................................. 7, 9

*DIRECTV, Inc. v. Imburgia*,
   577 U.S. 47, 136 S. Ct. 463 (2015) ...................................................................... 11

*Falk v. Aetna Life Ins. Co.*,
   Civil Action No. 19-00434 (MAS)(DEA), 2019 WL 4143882
   (D.N.J. Aug. 31, 2019) ....................................................................................... 1, 4

*Fischer v. G4S Secure Sols. USA, Inc.*,
   Civil Action No. 10-6792, 2014 U.S. Dist. LEXIS 86139 (D.N.J.
   June 25, 2014), *aff'd*, 614 F. App'x 87 (3d Cir. 2015) ........................................... 1

*Garfinkle v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
   773 A.2d 665, 168 N.J. 124 (N.J. 2001) ............................................................... 9

*Gomez v. Rent-A-Ctr., Inc.*,
   No. 2:18-CV-1528-KM-SCM, 2018 WL 3377172 (D.N.J. July 10,
   2018) ...................................................................................................................... 3

*Graziano v. Grant*,
   741 A.2d 156, 326 N.J. Super. 328 (N.J. Super. Ct. App. Div.
   1999) ...................................................................................................................... 5

*Gupta v. Morgan Stanley Smith Barney, LLC*,
   934 F.3d 705 (7th Cir. 2019) ..............................................................................6, 7

*Harrison v. Nissan Motor Corp. in U.S.A.*,
   111 F.3d 343 (3d Cir. 1997) ....................................................................................5

*Horowitz v. AT&T Inc.*,
   No. 3:17-CV-4827-BRM-LHG, 2019 WL 77331 (D.N.J. Jan. 2,
   2019) ......................................................................................................7, 10, 13, 14

*Jasicki v. Morgan Stanley SmithBarney LLC*,
   No. A-1629-19T1, 2021 WL 162004 (N.J. Super. Ct. App. Div.
   Jan. 19, 2021)..........................................................................................................7, 8

*Jayasundera v. Macy's Logistics & Operations*,
   No. 14-CV-7455 (SDW)(SCM), 2015 U.S. Dist. LEXIS 100922
   (D.N.J. Aug. 3, 2015)..............................................................................................9

*Kindred Nursing Ctrs. L.P. v. Clark*,
   __ U.S. __, 137 S. Ct. 1421 (2017)................................................................10, 11

*Leodori v. Cigna Corp.*,
   814 A.2d 1098, 175 N.J. 293 (N.J. 2003).........................................................9, 10

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530, 132 S. Ct. 1201 (2012)..................................................................11

*Ricci v. Sears Holding Corp.*,
   Civil No. 14-3136 RMB/JS, 2015 U.S. Dist. LEXIS 7617 (D.N.J.
   Jan. 23, 2015)........................................................................................................3, 9

*Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*,
   913 F.3d 200 (1st Cir. 2019)...................................................................................6

*Schmell v. Morgan Stanley & Co.*,
   Civ. No. 17-13080, 2018 WL 1128502 (D.N.J. Mar. 1, 2018) .......................8, 9

*Skuse v. Pfizer, Inc.*,
   236 A.3d 939, 244 N.J. 30 (N.J. 2020).................................................4, 9, 12, 13

*Troy v. Rutgers*,
   774 A.2d 476, 168 N.J. 354 (N.J. 2001)...............................................................5

*Uddin v. Sears, Roebuck & Co.*,
   Civil Action No. 13-6504 (JLL), 2014 U.S. Dist. LEXIS 43252
   (D.N.J. Mar. 31, 2014) .................................................................................... 9

*Weichert Co. Realtors v. Ryan*,
   608 A.2d 280, 128 N.J. 427 (N.J. 1992) ............................................................ 5

## Other Authorities

Restatement (Second) of Contracts § 30 (1981) ........................................................ 5

I.  **INTRODUCTION**

Plaintiff George Levy concedes or does not dispute the material facts proving the existence of a valid arbitration agreement: offer, acceptance, and consideration.[1] Instead, he argues that something more than a failure to opt out—some "additional manifestation of assent"—is necessary to form a contract here.  He is wrong.

Levy either misreads applicable New Jersey precedent or asks this Court to interpret that precedent in a manner that disfavors arbitration agreements and makes them more onerous to enter than other contracts. Accordingly, this Court should reject Levy's arguments and grant AT&T's motion.

II.  **LEGAL ARGUMENT**

    A.  **Levy Does Not Dispute The Evidence Proving He Had Notice of And Accepted The Agreement.**

The material facts on this motion are not in dispute. AT&T sent Levy three emails about the Agreement on December 3, 2011, December 15, 2011, and January 16, 2021. Giordano Decl., ¶ 18, Exh. 4. These emails communicated to Levy the essential terms of the Agreement and that he would accept AT&T's offer to mutually

---

[1] Levy does not contest consideration or that the Agreement covers the claims asserted in this matter. He therefore concedes these points. *See Falk v. Aetna Life Ins. Co.*, Civil Action No. 19-00434 (MAS)(DEA), 2019 WL 4143882, at *4 (D.N.J. Aug. 31, 2019) ("Plaintiff does not argue his claims are outside the scope of the Agreement, and the Court, therefore, need only decide whether the Arbitration Provision is valid."); *Fischer v. G4S Secure Sols. USA, Inc.*, Civil Action No. 10-6792 (JBS/AMD), 2014 U.S. Dist. LEXIS 86139, at *45–46 (D.N.J. June 25, 2014) (party waived argument by not addressing it in summary judgment opposition brief), *aff'd*, 614 F. App'x 87 (3d Cir. 2015).

arbitrate claims if he did not record his decision to opt out by February 6, 2012. *Id.* ¶ 11, Exh. 1. The emails clearly and unambiguously explained what arbitration meant: "Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes." *Id.*, ¶ 13, Exh. 2. AT&T directed Levy to review the Agreement on AT&T's intranet by clicking a link to the Agreement in the emails, which Levy did on January 12, 2012. *Id.*, ¶ 20, Exh. 5. To do so, Levy authenticated his identity using his unique AT&T UID and a confidential password. *Id.*, ¶ 14, Exh. 3.

The Agreement informed Levy that by accepting AT&T's offer, "employees and AT&T [would] use independent, third-party arbitration rather than courts or juries to resolve legal disputes." *Id.*, ¶ 13, Exh. 2. The Agreement reiterated the clear instructions to opt out if Levy did not wish to be bound: "**Should you choose not to participate, you must opt out – that is, decline to participate in the arbitration process – no later than 11:59 p.m. Central Standard Time on Monday, February 6, 2012.** If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement." *Id.* (emphasis in original). Levy then did precisely what AT&T told him to do if he wanted to accept the offer: he did not opt out. *Id.*, ¶¶ 25–26.

Levy offers nothing to rebut this evidence. He merely states that he has "no recollection" of receiving the offer emails or accessing the Agreement. Declaration

2

of George Levy ("Levy Decl."), ¶¶ 4–7. That is no basis to deny AT&T's motion. A plaintiff's failure to recall does not create a genuine issue of material fact as a matter of law. *See Gomez v. Rent-A-Ctr., Inc.*, No. 2:18-CV-1528-KM-SCM, 2018 WL 3377172, at *4 (D.N.J. July 10, 2018) ("The admissible evidence demonstrates that [plaintiff] assented to the Arbitration Agreement. There is no genuine, material issue of fact requiring a jury trial, and her bare claim that she cannot remember signing is insufficient to create one"); *Ricci v. Sears Holding Corp.*, Civil No. 14-3136 RMB/JS, 2015 U.S. Dist. LEXIS 7617, at *12, *14 (D.N.J. Jan. 23, 2015) (compelling arbitration despite plaintiff's argument he had "no recollection" of accessing arbitration agreement on employer's information portal).

He next argues that AT&T has not established that he read and understood the Agreement's terms by stating that he "never represented to Defendant that [he] opened, viewed, and read every single email sent to me in a given day," or that he "had fully reviewed the Agreement or fully understood its terms." Levy Decl., ¶¶ 9–10. What he may have represented to AT&T is separate and distinct from whether he read or understood the Agreement, and nothing in his declaration suggests he failed to do either of those things. Even if he had, his failure would not excuse him from his contractual obligation. *See Brennan v. CIGNA Corp.*, 282 F. App'x 132, 136 n.3 (3d Cir. 2008) ("[T]he failure to read a contract does not excuse a party from being bound by its terms;" "[t]he fact that plaintiff-appellants do not specifically

3

recall having received, or may not have read, these policies does not constitute fraud nor render the terms of the policies unenforceable."); *Falk*, 2019 WL 4143882, at *5 (it is a "well-established principle that in the absence of fraud, an individual entering into an agreement is assumed to have read and understood its terms") (citation omitted); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 953, 244 N.J. 30, 54 (N.J. 2020) (compelling arbitration and noting that plaintiff's failure to read employer's communications about arbitration program "would have no impact on the analysis" as to whether the parties formed an enforceable contract). In any event, the suggestion that Levy was unaware of the Agreement and its contents is belied by AT&T's evidence showing that Levy clicked the link in the offer emails to access the full text of the Agreement online. Giordano Decl., ¶¶ 14, 20, Exhs. 3, 5.

Given the lack of a genuine dispute of material fact as to contract formation, Levy's only challenge to AT&T's motion is a legal one: he argues that his failure to opt out of the Agreement is insufficient to establish his assent under New Jersey law. For the reasons set forth below, Levy is wrong.

### B. By Failing to Opt Out by the Deadline, Levy Accepted AT&T's Agreement As A Matter Of Law.

#### 1. Failure to Opt Out Can Constitute Acceptance Under New Jersey Law.

Like most states, New Jersey recognizes that "[t]he offeror is the master of his offer. An offeror may prescribe as many conditions, terms or the like as he may

wish, including but not limited to, the time, place and method of acceptance." *Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343, 348 n.8 (3d Cir. 1997) (citation omitted); *see also* Restatement (Second) of Contracts § 30 (1981) ("An offer may invite or require acceptance to be made by an affirmative answer in words, or by performing or refraining from performing a specified act. . . . "). Thus, an offeree accepts the agreement by acting in "the manner of acceptance prescribed by the offer." *Harrison*, 111 F.3d at 348 n.8.

New Jersey courts have long recognized silence or inaction as acceptance where the offer calls for the other party to reject it if he has no intent to be bound. *See, e.g.*, *Troy v. Rutgers*, 774 A.2d 476, 482, 168 N.J. 354, 365–66 (N.J. 2001) ("Implied contract terms generally are considered as binding as express contract terms," and "assent may be manifested by words or other conduct, sometimes including silence."); *Graziano v. Grant*, 741 A.2d 156, 162, 326 N.J. Super. 328, 340 (N.J. Super. Ct. App. Div. 1999) ("Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offerors expecting a reply and, therefore, assuming that silence indicates assent to the proposal"); *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284, 128 N.J. 427, 436 (N.J. 1992) ("circumstances may justify the offeror's expecting a reply and, therefore, assuming that silence indicates assent to the proposal").

This basic principle of contract law is particularly salient in the employment context where the parties have established a course of dealing, which is not unique to New Jersey law. As one court enforcing this exact Agreement has noted, AT&T and its employees are "engaged in a long-standing, close legal relationship as employee and employer . . . one in which AT&T and its employees regularly communicated company business with one another via email." *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 213 (1st Cir. 2019) (affirming order compelling arbitration where AT&T employee received same notice of Agreement as Levy and thereafter failed to opt out). This course of conduct "implicates [the employee's] knowledge that she had the duty to speak and that her choice not to would be reasonably interpreted by AT&T as acceptance." *Id.*

Other courts agree. In *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705 (7th Cir. 2019), the Seventh Circuit Court of Appeals affirmed an order compelling arbitration where the employer emailed the plaintiff information about a dispute resolution policy and opt-out form, and the plaintiff failed to opt out within 30 days. *Id.* at 714. The Court noted, "employment includes the understanding that employees will act with diligence in following an employer's instructions and responding to requests, whether transmitted by email or another reasonable mode of communication." *Id.*

6

It is precisely so here. The emails and the Agreement—which Levy indisputably received—made clear that the onus was on Levy to opt out if he did not want to be bound. Levy admits as much in his opposition. Pl.'s Opp. at 10 ("As pointed out by AT&T, the Agreement only identifies one (1) method by which Levy could agree to the arbitration process, *i.e.*, by not opting out."). As his employer for "more than twenty-one (21) years," *id.* at 2, AT&T was justified in expecting a response if Levy intended to reject this change to the terms and conditions of his employment. Put simply, Levy was not "free . . . to ignore [his employer's] communications without repercussion," particularly given his notice of the legal consequences of his inaction. *Gupta*, 934 F.3d at 714. He is therefore bound.

### 2. New Jersey Law Does Not Require Additional Evidence of Assent.

New Jersey law requires only that an offeree receive notice of the terms of an offer and manifest assent as prescribed in the offer itself, nothing more. *See Horowitz v. AT&T Inc.*, No. 3:17-CV-4827-BRM-LHG, 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) ("Plaintiffs accepted the terms of the Arbitration Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline"); *Descafano v. BJ's Wholesale Club, Inc.*, No. 15-CV-7883(PGS)(DEA), 2016 WL 1718677, at *2 (D.N.J. Apr. 28, 2016) ("*Once a party receives notice, acceptance of the arbitration program may be signified by failing to opt out.*") (emphasis supplied); *Jasicki v. Morgan Stanley SmithBarney LLC*, No. A-1629-

19T1, 2021 WL 162004, at *5 (N.J. Super. Ct. App. Div. Jan. 19, 2021) (rejecting plaintiff's argument that "defendants were required to prove the extent to which she read the [offer] email, beyond presenting objective evidence that she received the email, in order to compel arbitration of plaintiff's claims").

Levy's argument that New Jersey law requires not just assent in the manner prescribed by the offer but "some *additional* manifestation of assent accompanying the failure to opt-out" misreads controlling precedent. Pl.'s Opp. at 5 (citing *Schmell v. Morgan Stanley & Co.*, Civ. No. 17-13080, 2018 WL 1128502, at *2 (D.N.J. Mar. 1, 2018)) (emphasis in original). The *Schmell* passage Levy cites does not articulate a general principle of law, but refers only to the court's description of evidence offered in the cases upon which that defendant relied, and which the court found factually distinguishable from the record in *Schmell*. 2018 WL 1128502, at *3. The *Schmell* court also stated that explicit assent to an arbitration agreement "need not be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration process, *such as failing to opt out*." *Id.* at *2 (citations omitted) (emphasis supplied).

Moreover, the *Schmell* court denied defendant's motion to compel because "there is an underlying dispute as to whether Plaintiff had notice of the agreement." *Id*. at *3–4. That is not the case here, where the facts establishing Levy's notice of the Agreement are undisputed. *See* section II.A, *supra*. AT&T's undisputed evidence

8

demonstrating that Levy in fact received the offer emails and the Agreement are much more like the electronic records demonstrating plaintiff's notice before his or her failure to opt out in the *Ricci*, *Descafano*, *Jayasundera*, and *Uddin*[2] cases that the *Schmell* court distinguished. The court compelled arbitration in each of those cases, and it should do so here.

Levy's reliance on *Leodori v. Cigna Corp.*, 814 A.2d 1098, 175 N.J. 293 (N.J. 2003), and *Garfinkle v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 168 N.J. 124 (N.J. 2001), is similarly misplaced, as neither of those cases suggest that some additional or affirmative act is necessary to accept an opt-out arbitration agreement. Both decisions recognize that courts must analyze the intent of the parties as reflected in the contract itself. *Leodori*, 175 N.J. at 302; *Garfinkle*, 168 N.J. at 135. As the *Skuse* court later explained, when the contract specifies inaction as the means of acceptance, that conduct amounts to unequivocal assent. 244 N.J. at 59 (distinguishing *Leodori* on grounds that the offer in that case required a signature for consent).

Respectfully, this is precisely how the court in *AT&T Mobility Servs. LLC v. Jean-Baptiste*, Civil Action No. 17-11962, 2018 WL 3425734, at *3 (D.N.J. 2018),

---

[2] *Descafano v. BJ's Wholesale Club, Inc.*, No. 15-CV-7883(PGS)(DEA), 2016 WL 1718677 (D.N.J. Apr. 28, 2016) (unpublished); *Jayasundera v. Macy's Logistics & Operations*, No. 14-CV-7455 (SDW)(SCM), 2015 U.S. Dist. LEXIS 100922 (D.N.J. Aug. 3, 2015); *Uddin v. Sears, Roebuck & Co.*, Civil Action No. 13-6504 (JLL), 2014 U.S. Dist. LEXIS 43252 (D.N.J. Mar. 31, 2014).

*appeal dismissed*, No. 18-2999, 2019 WL 1163844 (3d Cir. 2019) erred by concluding that plaintiff did not assent to the Agreement because "[plaintiff did not] click or sign anything that said '[she] agree[d].'" Like Levy, Judge Cox Arleo misapplied *Leodori* by requiring additional evidence of assent beyond the conduct AT&T identified as acceptance. Judge Martinotti later disagreed with *Jean-Baptiste*, compelled arbitration under the Agreement, and noted that the standard articulated by Judge Cox Arleo "imposes a more onerous test than intended by the New Jersey Supreme Court for establishing whether an arbitration agreement was formed." *Horowitz*, 2019 WL 77331, at *7. As the *Horowitz* court explained, "[U]nlike *Leodori*, where the employer's agreement required a signature as a concrete manifestation of assent, AT&T's policy only provided that failure to opt out of the arbitration agreement after receiving notice and clicking on a link to review the Arbitration agreement would indicate intent to be bound by the arbitration agreement." *Id.*

The standard articulated in *Jean-Baptiste* runs afoul of the Federal Arbitration Act by subjecting opt-out arbitration agreements to more burdensome requirements than other contracts. The United States Supreme Court repeatedly (and sometimes summarily, without briefing or argument) has reversed state courts that invoked special rules of law (both statutory and judge-made) that apply uniquely to arbitration agreements. *See, e.g.*, *Kindred Nursing Ctrs. L.P. v. Clark*, __ U.S. __,

10

137 S. Ct. 1421, 1425–27 (2017) (reversing Kentucky Supreme Court, which had declined to enforce arbitration agreements entered into by person holding power of attorney to act for someone else by adopting a "clear-statement rule" that "a power of attorney could not entitle a representative to enter into an arbitration agreement without *specifically* saying so;" the rule offended the FAA because it was targeted at arbitration contracts and did not apply to any other agreements under Kentucky law) (emphasis in original); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54, 58, 136 S. Ct. 463, 468, 471 (2015) (reversing decision of California intermediate appellate court that had adopted special contract-interpretation rule for arbitration agreements, noting the FAA requires courts to place arbitration agreements "'on equal footing with all other contracts'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33, 132 S. Ct. 1201, 1203 (2012) (unanimously and summarily reversing West Virginia Supreme Court, which held that "as a matter of public policy under West Virginia law," the arbitration agreement could not reach personal-injury or wrongful death claims arising from nursing homes; reversal was warranted because the West Virginia court had failed to apply to the arbitration agreement generally applicable contract-law principles); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746 (2011) (Court considered and held preempted California rule used to invalidate arbitration agreement, establishing equal treatment principle: court may

11

invalidate arbitration agreement based on "generally applicable contract defenses," but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue").

Levy argues that *Skuse* forecloses a preemption argument by holding that "New Jersey's 'waiver-of-rights" caselaw is part of New Jersey's general principles of contract formation and thus does not put arbitration agreements on unequal footing." Pl.'s Opp. at 8 (citing *Skuse*, 244 N.J. at 48–49). *Skuse* did not hold that all contracts, regardless of subject matter, require some additional manifestation of assent or affirmative action to be enforceable. Rather, the court recognized that an offer may designate inaction as a means of assent, and conduct consistent with the offer (in that case, continued employment) is an adequate expression of an intent to be bound. *Id.* at 60–61.

The passage Levy cites from *Skuse* applies not to the manifestation of assent necessary to enter a contract, but to the clarity of the contractual language and waiver of rights provision. *Skuse*, 244 N.J. at 48 ("Our jurisprudence has stressed that when a contract contains a waiver of rights – whether in an arbitration or other clause – the waiver 'must be clearly and unmistakably established.'") (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 444 (2014)). The citation to *Atalese* makes this clear. In *Atalese*, the court declined to compel arbitration because the contract did not clearly and unmistakably inform the offeree that she was giving up the right

12

to pursue statutory claims in court. *Id.* at 444. This is not an issue here, where AT&T used plain language in both the offer email and Agreement to explain the arbitration process and failure to opt out as the means of acceptance. *See* Def.'s Mot. at 10–11. Not only does *Skuse* continue to prohibit more onerous requirements for the formation of opt-out arbitration contracts, it supports AT&T's position that inaction can constitute assent in this circumstance.

### 3. The Offer Need Not Specify That Continued Employment, In Addition To Failure To Opt-Out, Constitutes Assent.

Levy places much emphasis on the fact that the Agreement did not expressly state that continued employment constitutes assent. Pl.'s Opp. at 9–11. This misstates AT&T's position. It is not continued employment but *failure to opt out* by the deadline that AT&T argues indicates assent, because that is what the Agreement specified by Levy's own admission. *Id.* at 10. Thousands of Levy's colleagues continued employment at AT&T after the February 6, 2012, deadline but are not bound by the Agreement because unlike Levy, they recorded their decision to opt out. Giordano Decl., ¶ 25.

Further, the District of New Jersey has already rejected the argument that the Agreement must expressly condition acceptance on continued employment to be enforceable. *Horowitz*, 2019 WL 77331, at *8 (none of plaintiffs' authorities "stand for the proposition that the offeror must state that continued employment is the required form of acceptance") (citing Restatement (Second) of Contracts § 30). As

13

the *Horowitz* court noted, "Plaintiffs accepted the terms of [AT&T's] Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline." *Id.* at *9. This Court should reach the same conclusion here.

### III.   CONCLUSION

The Agreement and the emails that preceded it were clear that Levy had a choice: if he wished to reject AT&T's offer to mutually arbitrate claims, he needed to opt out. Levy did not opt out, and has enjoyed the benefit of AT&T's promise to arbitrate any claims it may have against him for years. He should not be permitted to avoid his reciprocal contractual obligation simply because he would now rather litigate. Accordingly, this Court should order Levy to submit to arbitration pursuant to the terms of the Agreement, and stay this case pending the completion of that arbitration.

Dated: September 13, 2021                         Respectfully submitted,

/s/ Daniel S. Richards
Daniel S. Richards
Kenneth W. Gage*
Sara B. Tomezsko*
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorneys for Defendant*
*AT&T Services, Inc.*

\* Admitted *pro hac vice*

14